UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Tommy Reynolds | ) | CASE NO. 06-cv-948 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Ferro Corporation, | ) | <u>Memorandum of Opinion and Order</u> |
| United Steel Workers of Am., AFL-CIO, | ) | |
| Arlen Rollins, and | ) | |
| Tim Buxton, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion of Union Defendants to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 7) and Defendant Ferro Corporation's Motion to Dismiss Counts Three and Nine of Plaintiff's Complaint (Doc. 10). Plaintiff Tommy Reynolds disputes the propriety of the termination of his employment from Defendant Ferro Corporation ("Ferro"). For the reasons that follow, the Motions are GRANTED.

1

**FACTS**

Plaintiff Tommy Reynolds brings claims against his former employer Ferro, Ferro's doctor Arlen Rollins, D.O., Reynolds's former union the United Steelworkers of America, AFL-CIO ("USW"), and Tim Buxton, a union representative (USW and Buxton are referred to collectively as the "Union Defendants"). Reynolds's Complaint alleges the following. He was employed as a laborer for Ferro and represented by USW Local 1170-2. (¶¶ 1,3). Ferro and USW were parties to a collective bargaining agreement ("CBA") which governed Reynolds's employment, including certain grievance procedures. (¶¶ 2, 4-5).

In August of 2002 Reynolds sustained a work-related injury to his knee and lower back which he then reported to Ferro's medical department. (¶¶ 6-7). A number of outside doctors recommended that Reynolds be placed on light duty consistent with Ferro's light duty policy. (¶¶ 8-28). However, Ferro's doctor Rollins disagreed. (¶ 29). He cleared Reynolds to return to full duty even though Reynolds was unable to perform the work. (¶¶ 30-31). Reynolds was unable to return to work and went on a medical leave of absence. (¶ 32).

Reynolds filed a worker's compensation claim. (¶33). Despite Rollins's opposition, the District Hearing Office, Staff Hearing Office and Industrial Commission sustained the claim. (¶¶ 43-43). Nonetheless, when Ferro appealed to the Cuyahoga County Court of Common Pleas Reynolds dismissed his claim without prejudice. (¶¶ 44-45). Reynolds was cleared to return to work on June 6, 2003, but was terminated on June 25 for the stated reason of falsification of company records. (¶¶ 46-49). Ferro did not state that the discharge was due to Reynolds's medical restrictions. (¶¶49-50).

On June 26, 2003, with the aid of Buxton, Reynolds filed a grievance claiming that his

termination was "improper, unjust and discriminatory" and seeking back pay and other lost benefits. (¶¶ 51-52). A hearing took place on June 28, 2004. (¶ 53). Reynolds alleges that Rollins improperly presented false and irrelevant testimony that Reynolds was unable to return to work, that Reynolds's injuries were actually sustained on a fishing boat, and that Reynolds habitually abused Vicodin. (¶¶ 62-68).

The arbitrator issued his decision on December 13, 2004. (¶ 55). The arbitrator found that Ferro did not have just cause to terminate Reynolds for falsifying information. (¶¶ 54-55). However, the arbitrator found that Reynolds should have returned to work without restrictions soon after the August 21 injury, and as a result denied any "backpay or benefits during the time he was not working . . . ." (¶57). As to Reynolds's return to work, "the Company is to return the Grievant to his former position if available or to a similar position based upon the seniority of the Grievant, after the Grievant obtains a medical opinion that his lumbar strain is resolved and that he may return to work without restrictions, pursuant to the procedure set forth in the decision . . . ." (¶ 71). That procedure required Reynolds to "submit[] to the Company a Medical Report from a medical doctor, acceptable to Dr. Rollins or other Company doctor, that the Grievant is able to return to work without restrictions." (¶ 69). "Should the forgoing not resolve the medical problem the Union and the Company are to confer and agree on a third doctor whose opinion both the Union and the Company agree to accept to resolve this matter." (¶ 69).

Reynolds has identified a number of aspects of this decision that he faults. First, the arbitrator erred in denying back pay because he misinterpreted the medical reports following the August 21 injury. (¶¶ 58-61, 72). Second, Reynolds's ability to return to work was left

3

uncertain despite a "dearth of evidence that Reynolds was not capable of returning to his former position without restrictions . . . ." (¶¶ 61, 73). Third, Reynolds's continued employment was left to the discretion of Rollins, who "had already demonstrated a bias against Reynolds' efforts to return to work[,]" and a third party doctor. (¶¶ 73, 78). Fourth, "the award failed to specifically address the possibility that Reynolds should be cleared for a return to work in accordance with [Ferro's] light duty policy." (¶ 74).

Buxton and USW advised Reynolds that he had "won" his grievance. (¶ 77). They did not appeal the award on Reynolds's behalf, in spite of the arbitrator's improper decisions regarding backpay and lost benefits. (¶¶ 60, 76). They also failed to advise him that he might be left without employment for an indefinite period. (¶ 78).

On January 7, 2005, Reynolds submitted a medical report from Dr. Brocker stating that he was able to return to work without restrictions. (¶¶ 79-80). Buxton forwarded the report to Ferro and requested that Reynolds be returned to work on January 12. (¶ 81). Rollins did not accept the report and on April 21, 2005, provided a letter stating the specific job requirements of a general laborer. (¶¶ 82-84). Buxton failed to challenge the job requirements. (¶ 85). On May 11, 2005, Rollins officially rejected Dr. Brocker's report but stated the Reynolds might return to work "with appropriate modifications." (¶¶ 86-88). "Rollins, however, would only permit Reynolds to return to work with appropriate modifications in exchange for Rollins' ability to consult with Dr. Brocker."[1] (¶ 89).

---

[1] Reynolds also alleges that "[u]pon information and belief, Rollins' stated reasons for wishing to speak with Dr. Brocker were pretextual and . . . Rollins did not wish to speak about 'appropriate modifications' but rather, wished to convince Dr. Brocker to change his opinion." (¶ 90).

4

Reynolds alleges that Buxton and USW failed him in three respects following the Rollins letter.  First, they "refused to pursue Rollins' suggestion that Reynolds be returned to work with appropriate modifications."  (¶ 91).  Second, they failed to inquire whether there existed a "similar position based upon the seniority of Reynolds" that he could perform.  (¶ 92).  Third, they instead "sought a third party doctor's opinion in keeping with the Arbitrator's award."  (¶ 93-94).

Reynolds was examined by Dr. Mazanec on August 12, 2005.  (¶ 95).  Dr. Mazanec issued an opinion on September 16, 2005, which essentially concluded that Reynolds was unable to perform his job functions.  (¶¶ 96-98).  Reynolds faults Buxton for failing to contact Dr. Mazanec "with further questions . . . ."  (¶ 99).  Buxton failed to ask "whether Reynolds could perform the essential job duties of a 'a similar position based upon the seniority of [Reynolds],' which maintained physical job requirements other than as outlined by Rollins in his April 21, 2005 letter."  (¶ 100).  Buxton failed to inquire whether Reynolds could undergo medical treatment that would allow him to eventually meet the requirements outlined in the April 21, 2005 letter.  (¶ 101).  Finally, Buxton failed to inquire whether Ferro would accommodate Reynolds with light or restricted duty.  (¶ 102).  Instead Buxton sent Reynolds a letter on September 30, 2005, stating that "the Doctor's finding is final and the grievance and arbitration process on this matter is complete."  (¶ 103).

On December 14, 2005, Reynolds requested that Buxton and USW pursue light duty on his behalf.  (¶ 104).  They refused to do so, and pursuant to a request from Reynolds, resubmitted the September 30 letter as the reason for their refusal.  (¶¶ 105-108).  Reynolds's counsel responded with a letter on January 31, 2006.  (¶ 109).  The Union's general counsel responded

that there was no light duty work, that the arbitrator "went beyond the limited question submitted to him," and defended the decision not to appeal the arbitrator's ruling. (¶¶ 110-116).

Reynolds filed his nine-count Complaint on March 14, 2006. Plaintiff has filed only one count against the Union Defendants of "Breach of the Duty of Fair Representation under § 301 of the Labor Management Relations Act" (Count 4). The Union Defendants have moved to dismiss this count. As for the remaining counts against Ferro and Rollins, the only counts at issue here are Counts 3 and 9 for "Breach of Collective Bargaining Agreement against Ferro" and "Wrongful and Retaliator[y] Discharge in violation of Public Policy against Ferro." Ferro has moved to dismiss both of these counts. The details of each of the counts at issue will be discussed in more detail below.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). A claim is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).

"In practice, a . . . complaint must contain either direct or inferential allegations

6

respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

## **DISCUSSION**

Counts 3 and 4

For purposes of this Motion, Reynolds's Count 3 for "Breach of Collective Bargaining Agreement against Ferro" and Count 4 for "Breach of the Duty of Fair Representation under § 301 of the Labor Management Relations Act" rise and fall together. This type of claim by a union member is generally referred to as a "hybrid Section 301 fair representation claim." *Martin v. Lake County Sewer Co.*, 269 F.3d 673, 677 (6th Cir. 2001) (*citing DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)).

> A hybrid § 301 suit implicates the interrelationship among a union member, his union, and his employer. Jurisdiction arises under § 301 because Plaintiffs alleged breaches of the NCBA. To recover against a union under § 301, the union member must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation. If both prongs are not satisfied, Plaintiffs cannot succeed against any Defendant.

*Garrish v. Int'l Union*, 417 F.3d 590, 594 (6th Cir. 2005) (internal citations omitted).

The instant motions focus on the Union Defendants' duty of fair representation. Such actions are based on the union's total control of the employee's grievance. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994). "In the grievance context, the breach of the duty of fair representation occurs where the union: (1) conducts itself in an arbitrary or discriminatory manner, or in bad faith; (2) processes the grievance in a careless manner; or (3)

7

inadequately handles the grievance due to its ignorance of the contract provision." *LaPerriere v. Int'l Union, UAW*, 348 F.3d 127, 132 (6th Cir. 2003).

The Supreme Court has set a six month statute of limitations for hybrid Section 301 claims. *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238 (6th Cir. 1993) (*citing DelCostello*, 462 U.S. at 151). The claim accrues when the employee discovers, or should have discovered with the exercise of due diligence, the acts giving rise to the cause of action. *Garrish*, 417 F.3d at 594 (*citing Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996)). "The determination of the accrual date is an objective one: 'the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994) (*quoting Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 579 (6th Cir. 1987)).

Reynolds's Complaint was filed on March 14, 2006. Thus the critical date is September 14, 2005. The vast majority of the events referenced in the Complaint—including his original termination, the arbitration hearing, the arbitrator's decision, USW's failure to appeal, the continued refusal of Ferro to return him to work, Rollins's rejection of Dr. Brocker's report and specification of job requirements, and the examination of Dr. Mazanec—all occurred prior to this date. The only events falling after September 14, 2005, are Dr. Mazanec's September 16 opinion that Reynolds could not meet the job requirements, Buxton's September 30 letter that the grievance process was complete, and USW's later refusal to pursue light duty on Reynolds's behalf.

Reynolds recognizes these facts and makes two related arguments that his claim did not

accrue until September 30 or later. First, Reynolds explains that he could not be sure that he would not be returned to work and that USW would not pursue his claims further until September 30 or later, and thus he lacked knowledge of the acts giving rise to the cause of action. Second, Reynolds was told that he "won" his grievance. The breach only occurred after September 30 when the Union failed to enforce the "favorable" decision.

Reynolds's litigation position that the arbitration decision was favorable is belied by the allegations of his hybrid Section 301 count. The arbitrator "wrongfully denied Reynolds' request for backpay and other lost benefits, relying upon his misinterpretation of Dr. Erickson's October 17, 2002 medical opinion." (¶160). "Buxton and USW failed to appeal arbitrator Ipavec's decision in this regard on behalf of Reynolds." (¶ 161). "Despite a plethora of medical evidence" available to them, Buxton and USW failed to adequately represent Reynolds resulting in the arbitrator making "Reynolds' return to work expressly contingent upon the judgment of Rollins and/or a third party doctor whom Buxton and USW agreed to on behalf of Reynolds." (¶¶ 164-65). "Arbitrator Ipavec's opinion and award [making Reynolds's return to work contingent on medical opinions] would allow Ferro to facilitate its wrongful discharge of Reynolds" and "Buxton and USW failed to appeal [the] decision in this regard . . . ." (¶¶ 166-67).

Reynolds's position that the decision was favorable has clearly been adopted to avoid authority to the effect that a union has no obligation to appeal an unfavorable arbitration decision. *E.g., Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers,* 746 F. 2d 1316, 1321-22 (7th Cir. 1984); *Sear v. Cadillac Auto Co.*, 654 F.2d 4, 7 (1st Cir. 1981). By casting the result of the arbitration as favorable "or potentially favorable,"

9

Reynolds is attempting to bring his case within the holdings that unions have a duty to enforce favorable arbitration decisions. *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1247 n.13 (7th Cir. 1990); *Meyer v. CPP Security Service, Inc.*, No. 85 C 1495, 1985 U.S. Dist. LEXIS 17289, *3-5 (N.D. Ill. July 31, 1985).  However, a decision that was wrongfully decided and which should have been appealed cannot be considered favorable.[2]  Moreover, as will be discussed *infra*, even if the resolution of the arbitrator's decision was considered favorable, the Complaint alleges that the Union Defendants' post-decision failures resulted from their decision to actually enforce the arbitrator's decision.

Reynolds also cannot claim that he lacked knowledge of the decision prior to September 14, 2005.  Claims based on union errors in conducting arbitration proceedings are generally held to accrue on the date the employee learns of the award.  *Schoonover v. Consol. Freightways Corp.*, 49 F.3d 219, 221-22 (6th Cir. 1995) (citing cases); *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 n.7 (11th Cir. 1985).  Reynolds's knowledge of the decision and the fact that it was unfavorable prior to September 14 is apparent from the face of the Complaint.  The arbitrator's December 13, 2004 decision did not return Reynolds to work or award him backpay and benefits.  Dr. Brocker's opinion was rejected in April and Reynolds was examined by Dr. Mazanec in August.[3]  Thus, nine months after the decision was issued Reynolds still had not

---

[2] This is not a case where there were grounds for the Union Defendants to file an additional grievance after the first unfavorable result.  *Cf., Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 n.7 (11th Cir. 1985).  The Union Defendants merely complied with the arbitrator's decision.

[3] In his brief Reynolds notes that on May 11 Rollins suggested that Reynolds could be returned to work "with appropriate modifications."  However, this offer expired prior to September

returned to work or received any favorable result from the decision. *See Martin*, 269 F.3d at 679 (explaining that an employee should have been aware of the adverse action when he had been out of work for two months).

Reynolds also argues that it is not the arbitration decision that he is challenging but rather the Union Defendants refusal, "as late as January 2006, . . . to take reasonable actions upon Reynolds' request in pursuit of Reynolds' return to work in the capacity of light or restricted duty." However, the Union Defendants' conclusions that Dr. Mazanec's "decision is final" (on September 30) and that Reynolds was not entitled to light duty work (on January 31) were in compliance with the arbitrator's decision. According to the Complaint, the arbitrator's decision left Reynolds's ability to return to work uncertain (¶¶ 61, 73), placed Reynolds's continued employment at the discretion of Rollins (who set the job requirements) and a third party doctor (¶¶ 73, 78), and "failed to specifically address the possibility that Reynolds should be cleared for a return to work in accordance with [Ferro's] light duty policy." (¶ 74). It is thus apparent that Reynolds's real and only dispute with the Union Defendants is over their representation before

---

14, 2005. As stated in Reynolds's Complaint, "Rollins . . . would only permit Reynolds to return to work with appropriate modifications in exchange for Rollins' ability to consult with Dr. Brocker." (¶ 89). "Buxton, on behalf of USW refused to pursue Rollins' suggestion that Reynolds be returned to work with appropriate modifications." (¶ 91). "Instead, Buxton, acting on behalf of USW, sought a third party doctor's opinion in keeping with the arbitrator's award." (¶ 93). This examination took place on August 12, 2005. (¶ 95). Moreover, the Complaint avers that allowing Rollins to consult with Dr. Brocker would have been fruitless, since "Rollins' stated reasons for wishing to speak with Dr. Brocker were pretextual and . . . Rollins did not wish to speak about 'appropriate modifications' but rather, wished to convince Dr. Brocker to change his opinion." (¶90).

the arbitrator.

The Sixth Circuit has distinguished between "occurrences within the six-month limitations period [that] in and of themselves may constitute, as a substantive matter, unfair labor practices" and "conduct occurring within the limitations period [that] can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice." *Noble*, 32 F.3d at 1001 (*quoting Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 305 (7th Cir. 1983)). Only the former are not barred by the statute of limitations. *Noble*, 32 F.3d at 1001. Because the Union Defendants' post-September 14 actions "only became an unfair labor practice when viewed in conjunction with conduct that occurred outside the limitations period[,]" Reynolds's claim against them is barred by the statute of limitations. *Noble*, 32 F.3d at 1001. Reynolds knew of the arbitrator's decision and its possible consequences prior to September 14. His claim cannot be saved by the fact that those consequences eventually came to pass. *See Garrish*, 417 F.3d at 597 (explaining that it is immaterial that a plaintiff learned more details of a union payoff in 2000 when he knew of the payoffs beforehand); *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1247 (7th Cir. 1990) (holding that alleged breaches connected to the arbitration decision accrued on the date of the decision); *Strassberg v. New York Hotel & Motel Trades Council*, 01-7283, 2002 U.S. App. LEXIS 3509, *4-5 (2d Cir. March 4, 2002) (finding a claim barred "even if a possibility of nonjudicial enforcement remained" where later efforts "were merely additional steps in her pursuit of the initial grievance").

Accordingly, the hybrid Section 301 claim is barred by the statute of limitations.

The Court will also discuss the Union Defendants' other arguments. First, the Union Defendants argue that Reynolds failed to exhaust the grievance procedures prior to bringing a

12

claim against them. However, as the Court has already discussed, a hybrid Section 301 claim is an appropriate vehicle for bringing a claim against a union for its breach of the duty of fair representation. More importantly, there is no indication from Plaintiff's Complaint that it is even possible for him to bring a grievance against his union for a breach of that duty. Accordingly, the issue is not appropriate for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Second, Buxton argues that as a union official he is immune from suit under Section 301. He is correct that Section 301 only provides for actions against a union and not against individuals working on behalf of the union. *N.W. Ohio Admins., Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1032 (6th Cir. 2001); *Carino v. Stefan*, 376 F.3d 156, 160 (3d Cir. 2004); *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999); *Carter v. Smith Food King*, 765 F.2d 916, 920-21 (9th Cir. 1985). Reynolds responds by citing *Walcher* for the proposition that Section 301 only provides immunity for individuals who properly enforce the collective bargaining agreement as opposed to those who are accused of failing to enforce members' rights. This argument is meritless. Section 301 immunity is useless if it only applies when the plaintiff has no claim. *Walcher* merely stands for the proposition that Section 301 immunity does not apply to claims that are entirely outside of the scope of Section 301. *Walcher*, 270 F.3d at 1032. Here Buxton is accused of breaching the duty of fair representation under Section 301 and thus is immune from suit.

Finally, Ferro contends, and Reynolds does not dispute, that Count 3 against Ferro for breach of the collective bargaining agreement is barred unless he has alleged a proper duty of fair representation claim against the union. *See, e.g., Garrish*, 417 F.3d at 594 ("If both prongs are not satisfied, Plaintiffs cannot succeed against any Defendant."). Because Reynolds's claim

against the Union Defendants is barred, so too is his claim against Ferro for breach of the collective bargaining agreement. *Chauffers, Teamsters an Helpers Local 391 v. Terry*, 494 U.S. 558, 564 (1990).

Accordingly, Counts 3 and 4 of the Complaint will be dismissed.

Count 9

Ferro next argues that Plaintiff's claim for "Wrongful and Retaliator[y] Discharge in violation of Public Policy against Ferro" must be dismissed. A claim for wrongful discharge in violation of public policy stems from the Ohio Supreme Court's decision in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 551 N.E.2d 981 (Ohio 1990). In *Haynes v. Zoological Soc'y,* the Ohio Supreme Court held that in order to bring a *Greeley* claim the "employee must have been an employee at will." 652 N.E.2d 948, 951 (Ohio 1995). The employee in *Haynes* was subject to a collective bargaining agreement and thus could not bring a *Greeley* claim. *Id*. Ferro relies on the rule of *Haynes* as precluding Reynolds's *Greeley* claims against it, since the Complaint alleges that his employment for Ferro was governed by a collective bargaining agreement.

Reynolds responds that *Haynes* was overruled by the Ohio Supreme Court's recent decision of *Coolidge v. Riverdale Local Sch. Dist.*, 797 N.E.2d 61 (Ohio 2003). The plaintiff in *Coolidge* was a school teacher who was injured when she was assaulted by one of her students. *Id*. at 62. She eventually received compensation for her work-related injuries under the Ohio Workers' Compensation Act. *Id*. at 63. The School Board nonetheless terminated her after a protracted absence from work. *Id*. The plaintiff filed suit claiming that her termination was in violation of the public policy set out in the Workers' Compensation Act. *Id*. at 64.

14

The Ohio Supreme Court first recognized that "[a] claim of wrongful discharge in violation of public policy . . . is generally conceived in Ohio and elsewhere . . . as an exception to the employment-at-will doctrine." *Id*. Coolidge was not an employee at will since her employment was protected by statute. *Id*. at 65. However, the statute "does not immunize the board from the dictates of state policy, and it certainly does not provide teachers with less protection against wrongful discharges than the common law generally affords to at-will employees." *Id*. Accordingly, she was allowed to go forward with her public policy claim. *Id*.

Although Reynolds is correct that *Coolidge* may have diluted the purity of the *Haynes* rule, the Court agrees with the vast majority of courts to address the issue that *Coolidge* does not overrule the core holding of *Haynes* that employees covered by collective bargaining agreements cannot bring *Greeley* claims.[4] The *Coolidge* decision did not even discuss *Haynes*; it is doubtful the Ohio Supreme Court intended to overrule its previous holding *sub silentio*. *Urban v. Osborn Mfg., Inc.*, 847 N.E.2d 1272, 1275 (Ohio App. 8th Dist. 2006); *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 365-66 (6th Cir. 2006); *Memmer v. Indalex, Inc.,* 4:06-cv-346, 2006 U.S. Dist. LEXIS 20140, *9-10 (N.D. Ohio April 17, 2006) (citing Ohio cases); *Reid v. Valley View Local Sch. Dist. Bd. of Educ.*, 3:04-cv-355, 2006 U.S. Dist. LEXIS 18821, *13 (S.D. Ohio Feb. 6, 2006). Indeed, *Coolidge* dealt with the unique situation of a school teacher whose employment was

---

[4]  *Haren v. Superior Dairy, Inc*., held that *Coolidge* also applied to employees covered by collective bargaining agreements. 2003-ca-331, 2004 Ohio App. LEXIS 4024, *9-11 (Ohio App. 5th Dist. Aug. 17, 2004). *Haren* did so without mentioning *Haynes* and has been rejected by courts that have considered its holding. *E.g., Urban*, 847 N.E.2d at 1275; *Memmer,* 2006 U.S. Dist. LEXIS 20140 at *11.

protected by statute.  *Klepsky v. United Parcel Service, Inc*, 1:04-cv-1683, 2005 U.S. Dist. LEXIS 21395, *24 (N.D. Ohio Sept. 27, 2005).  That case was also unique in that it involved the anti-retaliation provisions of the Workers' Compensation Act.  *Urban*, 847 N.E.2d at 1275; *Kusens*, 448 F.3d at 365-66.

Because Reynolds admits in his Complaint that his employment with Ferro was governed by a collective bargaining agreement (¶ 2), his *Greeley* claim will be dismissed.

### **CONCLUSION**

For the foregoing reasons, the Motions are GRANTED.  Counts 3, 4 and 9 are dismissed.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  9/1/06